The next matter, number 24-1280, Akeesh. John Yoy, Morgan v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin. Good morning, Your Honors. May it please the Court, Zhang Yu came for a petitioner. Does it help him? May I reserve one minute for rebuttal? Yes. And before you start, let me just make a general question, and I'll save interruptions. I think the crux of this case is whether, you know, the agency below erred in determining there was serious reason to believe that the crime had been committed by your client, which is sort of like the equivalent of probable cause. So I think if you want to go directly to the juggler, that's, I think, the threshold issue. Certainly, Your Honor. And I will start with what's not disputed. So what's not disputed is the burden of proof and standard of burden. So what that means, the Department of Homeland Security, the government, bears the burden to produce evidence to satisfy probable cause. What's disputed, on the other hand, is whether the evidence submitted by the DHS is enough to satisfy probable cause. The answer is no. So I will start with the BIA decision. So it's a little unclear to what extent the BIA adopted and endorsed the IJ's reasoning of the probable cause analysis. But what's clear from the BIA decision is that BIA said the arrests were, in these cases, enough to satisfy probable cause. But that cannot be true because under the Jamaican system, the apprehension is allowed under reasonable suspicion standard, not probable cause. Counsel? Yes. I'm sorry to interrupt you so early, but one of the things that concerned me about this case is whether you had exhausted that very specific argument. So I understand your position that your client raised this issue generally. But the fact that under Jamaican law, a warrant can be issued based on reasonable suspicion was not an argument that your client made specifically. And, you know, it's not sort of a question of legal jargon or citing the right case. It's a fact. And if that's not highlighted to the agency, how is the agency supposed to consider it? And I know it's in the country condition report, but is that really enough? And do you have a case to support you on this very specific issue of Jamaican law? I think so. So we start with the admission that this specific standard was not raised before the BIA. That's what we admitted. The problem of that argument raised by the government is that he raised that this arrest warrant is not enough to satisfy probable cause. And he mentioned in other contexts without the brief that the country condition, which was given full weight by the IAJ, should be considered, not specifically with respect to his point of the probable cause standard. And the BIA under the case law was obligated to consider all relevant evidence. So the government's position is that this court can review the claim that the arrest warrant is not enough to satisfy probable cause, but this court is precluded from even considering the country condition report in the record as part of the review and conclusion makes little sense when the BIA has the obligation to review all the record. And also, to be sure, our argument is not merely the fact. That's not the only basis of our probable cause argument. To the extent that if we assume that the BIA considered indoors the IAJ's reasoning of inferences, if there were two inferences, that still does not change the outcome that we propose. Because the Jamaica police report, which was created 10 months after the shooting, 10 months after the arrest warrant, says nothing about how the crime was connected to Petitioner. The IAJ made an inference that there was a victim, witness, who personally identified Petitioner as one of the assailants. The affidavit says nothing. The only part of what affidavit says is, at the time of police's arrival, and we don't even know who called the police, at the time of the police's arrival, there was two people lying on the floor. One was apparently died. The other one severely injured. The third person, this purported witness, was hiding under a bed at 1 a.m. in a room. That's what it says. It doesn't even say anything about whether detective interviewed the person and who said anything about Petitioner. So I understand that IAJ, as a fact finder, has wide latitude and made reasonable inferences, but that cannot be done without an evidentiary basis. And that affidavit says nothing about that basis. The second inference is actually more problem. So IAJ said there was evidence retrieved at the scene, the broken bullet, casing, blood sample. That corroborates the purported victim or witnesses' conclusion that Petitioner was one of the assailants. Affidavit says nothing about that point. What affidavit says is police retrieved, that's correct, the broken bullet, casing, blood sample. Period. And then they made the conclusive statement that these were assailants who attacked, who participated in the shooting. So I don't think it's an, I understand the probable cause is not onerous, as we argued in the previous case. That's what I'm going to ask. It's not an onerous standard. And the IJ is reviewing, you know, for probable cause, and he's got, you know, he's got information about the police report by Detective Campbell. He's got also, he makes some inferences from that. He's also taken into consideration that Morgan fled Jamaica, went through Mexico, kind of approximately at the same time. There's also a news article. So, again, under a threshold, you know, serious reasons to believe, or the equivalent probable cause isn't that sufficient because we're not, you know, or whoever is making that determination, the IJ in the first instance, he's not there or she's not there to say what was not presented. It's whether what was presented was sufficient to establish that probable cause. I do not think so, because the way that this probable cause is being employed in the context of serious non-political crime bar is the same, very similar to how the criminal law has been, because that's how the BI in this case have relied on as case law. And what's important is what the evidence is presented to the IJ. And I think what should have been done, it's not that IJ merely says that this evidence is not enough, the case, this bar doesn't apply and move on. What should have been done is just like how Judge Helphy mentioned in the previous case that, hey, government for the Department of Homeland Security, I really do not see how the evidence is tied to petitioner. If Dr. David doesn't even say any information about whether he was participant, do you have more evidence? Do you need more time? That's what should have been done. But that did not happen, and it is the department's burden, and IJ just cannot make a determinate inference without any evidentiary basis. The stake is too high. For that bar, petitioner is not even eligible for, even applying for the asylum withholding of remover. And this court should not let this case go, because the concern that I have over this case is that if this is enough, the arrest warrant issued under less demanding regional suspicion standard, and then the police report, which was created 10 months after the arrest warrant, still says nothing about any evidence connecting, being connected petitioner. If that's enough, all other cases, similar cases, such as red notice cases, would be sufficient to satisfy serious reasons for believing. And that's precisely what the Eighth Circuit rejected. That's precisely what the Ninth Circuit rejected in Barahona and Gonzalez custody of cases. So this court should extend those ruling and logic to the First Circuit. Counsel, I understand your concern about reasonable suspicion arguably being enough. I guess what I just wanted to understand, what do you think is most problematic about these documents? Is it the lack of understanding how the identification of Mr. Morgan as being one of the assailants is made? Because, again, Judge Halpete has pointed out another inference that it seems that I.J. made, is that your client did leave Jamaica quite soon after this alleged, or this incident occurred, and there does seem to be proof that the shooting itself occurred, right? So is the real question what is in the record that reliably links your client to the shooting? Is that the focus in your view? Correct. And the problem of the I.J. just merely relying on skimming over and then saying that this is enough to satisfy probable cause, that would render the probable cause standard, not probable cause, less meaningful. And that's pretty important because, again, the burden was with the Department of Homeland Security and I.J. as a neutral adjudicator that should have inquired more if there was insufficient information about the presented evidence. Ernest, I only have 30 seconds. Let me say this because you're sort of saying it's the I.J. Obviously there has to be probable cause established by the I.J., but the I.J. is, you know, there's this evidence from Jamaica comes to the I.J. The I.J., what the I.J. has to do is review if that is sufficient for probable cause. But what didn't happen in Jamaica or was done or whether we would have done it, like when I was a magistrate judge and maybe asked for more, you know, I'm not going to sign this, I'm going to ask for more. That didn't happen, but that doesn't necessarily entail that the I.J. couldn't have probable cause. And he can make reasonable inferences. And, again, it's a very, very low threshold. So you've got 30 seconds if you want to address that. And you have rebuttal also. I understand. But, again, probable cause is not to fleece. It's not even reason of suspicion. It's not any reason to believe. Congress intended that it has to be serious reasons to believe. And for that assessment, the agency adopted and other circuits have adopted probable cause. And for the probable cause, there has to be – I'm just going to borrow the same logic of the criminal law context of this circuit is there has to be a given piece of information that is trustworthy. And an officer can reasonably conclude that the crime has been committed by the person. There is not even a single piece of information connecting petitioner to the crime. Okay. Thank you. Let's hear, then, from Mr. Spurlock for the government. Please introduce yourself on the record to begin. Good morning. Matthew Spurlock on behalf of the United States. I'd like to start out going back to the point that was made earlier about the exhaustion issue because I think that kind of gets to the heart of the entire issue with the serious nonpolitical crime equating to probable cause, which we don't have any disagreement about in this case, that the probable cause standard is what we're dealing with. Petitioner's argument now before this court is focusing on, as he just said, identification. There's no identification of specific identification of the petitioner in the three arrest warrants, the affidavit written by law enforcement in Jamaica, as well as the I-213, and there's no mention of him specifically in a news article from Jamaica that was entered into evidence that just depicted what happened, but it didn't specifically name the petitioner. The problem in this case is that this is a completely different theory than was proposed by Petitioner when this case was before the immigration court. The quickest way to see this is that if you'll look at Petitioner's asylum application that was first filed with counsel, prior counsel, that application has, as an exhibit to it, the arrest warrants. The reason why he put the arrest warrant on the application was because his theory of what those were about, it wasn't him that they were looking for, that it was his identification or this is a mistake. His entire theory is that the bus-head gang in Jamaica is acting in cooperation with the Jamaican authorities, and that they issued this arrest warrant against Petitioner in order to bring him back to Jamaica to finish the job and to torture him and those sorts of things. That's an entirely different idea than we're getting today, which is these arrest warrants don't quite match up to what we think of as probable cause. That's a very specific argument that would have needed to be presented to the immigration judge and the board. We don't know really what Jamaica's concept is of reasonable suspicion or probable cause. We don't know what standard they used for these particular warrants. We don't know what standard they use when they actually do indictments. We don't know because it wasn't brought up during the immigration proceedings that it couldn't be pursued. But it is in the country conditions report that they, in fact, use reasonable suspicion under Jamaican law. So I'm not quite sure what you're arguing, that we don't know because it's stated just as a principle in that country conditions report. And I guess the question I have for you is I understand it wasn't presented in exactly the way that it is now, but nevertheless, and as I think as Mr. Morgan's counsel has argued, the issue was squarely before the agency. The brief to the BIA, which I read carefully, it does say that the warrants do not equal probable cause. I mean, that is an argument that is made. So why isn't that enough to meet the exhaustion requirement? Two parts to answer your question, Judge. The first part is yes, it was mentioned in the country reports from the State Department, which is hundreds of pages long and a huge 900-page record. And it's one line that says, which essentially is giving Jamaica credit that they don't engage in arbitrary arrests. But they use this lower standard than what we think of as a lower standard, but we really don't know because we don't know what Jamaican law is on this issue, which is what you would need to kind of know to understand that. The second part of your question, which was wasn't this raised in the board brief by the petitioner, where they took just a general these warrants don't amount to probable cause, isn't that enough? And the answer is no, it's not. And I would reference, it's in our brief, the Manguria case from this court, 86 of 4, 491. That case is an excellent sort of window to exactly what this case is. Yes, they raised the general theory about a general claim, but they don't get into the specifics of the arguments that are sort of tethered to that. If you argue identification now, but before you were arguing this is just strictly an opportunity to take him into custody to torture him more, which is a different thing, it's a totally different concept. So he's sort of suggesting now, well, we don't have enough evidence that this was actually him, other than the fact that, and also I want to get one thing kind of straight, is that the immigration judge in the board did not find in this case that the arrest warrants were the equivalent of probable cause. That's not what they found. They found, that's like saying because these are arrest warrants and we generally consider arrest warrants in the United States to be backed by, that's not what they said, they were going by the facts contained in the arrest warrant in conjunction with those other documents, which included the affidavit that was signed by the law enforcement officer. Let me ask you, even if the Jamaican standard is regional suspicion, can an IJ still, based on whatever evidence comes from Jamaica, plus any other regional inferences or any other evidence, make a conclusion that there is probable cause, even though the Jamaican standard is lower? Absolutely, Your Honor, and that's exactly what I was going to say next, is that the fact that even if those warrants are based on regional suspicion, not are probable cause, the fact that those warrants were issued the day after the alleged, or the murder and the near murder of another bushead gang member, those happen the next day, the affidavit doesn't occur for 10 months. That would seem to indicate that they had done an investigation, that they had done more investigation, and that they had identified the petitioner as one of the four assailants, and it particularly says, and one of the four assailants, we've come to learn, has fled to the United States through Mexico and is believed to be living in Connecticut. That just happens to be exactly what the petitioner did. Those are inferences that the agency was allowed to make in coming to their conclusion. Also, and I also want to clear up, it's not true that the agency didn't consider the I-213. There's a little bit of confusion about that, too. True, they do talk about the arrest warrant particularly, and the affidavit primarily, but what that takes away from is that this is a totality thing, and the immigration judge repeatedly referred to, I'm considering Exhibit 9 to be evidence that there is probable cause here, and that's what the finding was based on, and yes, the warrant is particularly, the warrant and the affidavit are the most important in that. Counsel, upon a finding of probable cause, the burden shifts to the applicant to prove by the powers of the evidence that the serious non-political crime does not apply. This is under ACFR Section 1240.8. I was wondering if you could address that proposition and how it relates to this case. Yes, Your Honor. The second prong, which we don't talk much about in our briefs for this case, is because everything was sort of pitted towards whether that first prong was met under probable cause. Once the probable cause is met that, yes, there are serious reasons to believe that the petitioner in this case committed serious crimes, now the petitioner can present evidence that would go into, yes, as he did before the board, say, yeah, this crime was not non-political, it was political. Why was it political? Because the Jamaican government is acting in cooperation with the bus hag gang. So if somebody had murdered Brogad and the other gang member down in Jamaica, that was in essence resisting the Jamaican government. That's why I'm saying this is so important as an exhaustion factor is that he actually raised before the board that exact point, that there's actually a second prong aspect to the case before the board. The board rejected it and said we don't buy that this is a political type of crime, so it does qualify as a serious non-political crime, but that's been abandoned before this court. We're not talking about that because they didn't raise it in the brief and they have moved back to that first prong. So I would just say that the second aspect is not really in before the court anymore, because they didn't come back with any evidence that this wasn't serious non-political. Can I ask you about the, oh, I'm sorry, Judge Kastman, do you have more questions? I just want to ask you about the cat claim, because there is another entirely different claim here. And I would like for you to address, I guess, two points. I know you're running out of time, but one, what is the government's position about when you have police in action for more than a year in response to police reports? Why? Do you have any case suggesting that that can't be acquiescence under our case law? And two, it seemed to me that the agency, the BIA really didn't address whether the beatings and threats by the bus head gang and then the police lack of response, whether that was acquiescence. It just didn't look at that issue at all, and wasn't that a legal error. So can you just address those aspects of your opposing counsel's arguments? Okay, so the second part of your question was did the board address the acquiescence of the government towards the... In the past. Exactly, the beatings and the threats, and then the reports and no response. Okay, and Petitioner's argument, for the most part, was sort of stripping the difference between, well, they didn't find the collaboration between the police and the gangs for the future, but maybe for the past they did, or vice versa. And I would just argue for that aspect of it, it doesn't really make any difference, because the only evidence of acquiescence or lack of acquiescence in this case was the Petitioner's testimony and his witness's testimony. And that was all obviously referring to past harm, past instances where the gang targeted the family and the witness. And then the Petitioner, I'm sorry. But I don't think that makes any difference, because that's the only basis for what the future torture would be. And past torture is only one element to be considered in considering whether there's going to be more likely or not to torture in the future, because that's what the standard is. So the issue of whether there's acquiescence is only based on these past instances, with the exception of the only other aspect of the future torture that was brought up was whether the government would engage in torture when he's returned. And the board and the IJ dealt with that by saying, no, the conditions in the country reports don't reflect that such that we would find that it's more likely than not. So for the second question, the first part of the question was, the year of time where the Petitioner was being targeted for extortion and beating by the bus-A gang member, and isn't that enough for a sign of, well, that's acquiescence? Isn't that enough for a sign of acquiescence between the government and the people who are abusing them? All I would give you an answer to that is that the finding of the agency was that the nature of whether or not they're trying to intervene or they're just not capable of intervening wasn't really much of an issue, because the whole thing is that they were in cahoots with each other the whole time. And the immigration judge and the board found that that wasn't credible, not persuasive. That, yes, there may be crime, there's a lot of crime in Jamaica, and the gangs are very aggressive, but there's no evidence that the police force were engaged in. But I think those are two separate issues. I think as your opposing counsel argues it, you can conclude, well, I don't believe that there's active cooperation, but there's very clearly an argument made that there's acquiescence in what's been happening by the lack of response. And, again, do you have any case to cite under our circuit precedent that inaction for over a year or about a year to repeat incidents is not enough to show acquiescence? I don't have anything that says that in the First Circuit case law that says that that's enough. I don't think I have anything that I can look and double-check, but I don't believe there is. But I would just sort of close by saying the – if I'm answering your question – is that this really was just a substantial evidence finding that the level of extortion, other criminal issues, and I'd also note that there's a lot of evidence that there's not enough to show acquiescence. And that none of these issues came about until Petitioner – Petitioner lived in Jamaica his entire life. It wasn't until 2019 when he started having problems with the bus head gang, and that's also when his business became very prosperous. So this is more of an issue of crime being targeted because of his business success and other family issues. And the other side of it is that the Jamaican police force in that area weren't particularly good at stopping crime, and that's not enough for torture, for a finding of acquiescence in torture. Okay. Anything else, counsel or colleagues? Okay. Well, thank you. I have – sorry. One quick follow-up question. Thank you, Al. I just want to be clear in my own mind. Do you agree that neither the IJ nor the BIA addressed what Petitioner raised as a possible death threat by the Jamaican police? You're talking about the incident in which Petitioner testified and his witness testified that he was pulled over and attacked by police. And the immigration judge found that that didn't amount to torture. That beating didn't amount to torture and didn't consider – did consider the threats and found that those threats were not – did not – were not torture. The threats weren't – the entire event, they considered the whole event holistically and said that whole event did not rise to the level of torture. Before the board, the Petitioner raises the issue that the immigration judge did not consider past threats, but the Petitioner in his brief to the board was only talking about past threats from the gang members as torture. He didn't mention past threats from the police as being – in and of itself, threats of imminent death are torture, and that's not what he raised before the board. That was our position. Okay. Thank you, Counsel. Mr. Kim, one minute rebuttal. Please introduce yourself back on the record to begin. May I please, of course, thank you, Kim, for Petitioner. I'll just briefly make two points about the Kat claim. So starting with the Judge Katzman's question about the credible threat – I'm sorry, the credible death threat-based torture claim. And my brother argues that it was not squarely exhausted. And I'm just going to quote what Petitioner wrote before the BIA. The police officer threatened to kill respondents, so Petitioner, if he did not keep paying the bus head gang. This was erroneous. Mental pain or suffering caused by or resulting from threats of imminent death constitutes torture, citing regulation. So that – this court should reject the exhaustion argument. Now, with respect to acquiescence, it's not just merely about inaction of one year. What happens at the end of inaction, this officer stopped Petitioner's vehicle, pulled him out of the vehicle, brutally attacked him, and he received the suffering. And police officer told him that either do the right thing or leave the community. That should be more than sufficient to satisfy breach of legal duty, and thus acquiescence. Thank you, Your Honor.